**E-FILED on** 09/15/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAFAYETTE HAYES<br><br>Plaintiff,<br><br>v.<br><br>DR. WILLIAMS, et. al.,<br><br>Defendants. | No. C-05-00070 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>**Re Docket No. 7** |

Defendants Dr. William E. Williams, Dr. John Christensen and Dr. Jessica Clarke move for summary judgment on plaintiff Lafayette Hayes' first amended complaint brought under 42 U.S.C. § 1983. Hayes opposes. Hayes also makes evidentiary objections to the declarations of Dr. Clarke, Dr. Christensen and Dr. Hayes, and objects to defendants' reply as untimely. For the reasons set forth below, the court grants defendants' motion for summary judgment.

### I. BACKGROUND

On July 15, 2004, Lafayette Hayes injured his left knee when he fell while trying to catch a bus. Opp'n. to Mot. for Summ. J. 2, Posada Decl. in Opp'n. to Mot. for Summ. J. Ex. A ("Posada Decl."). The knee injury was aggravated on August 24, 2004, when Hayes got his leg caught between the doors of a the light rail train. *Id*. at 3. He saw a physician at the San Jose Medical Center that same day, who following an X-Ray and clinical examination, diagnosed Hayes with an

acute left patellar tendon rupture and scheduled a follow-up visit with an orthopedic resident for August 31, 2004, a week later. Posada Decl. at Ex. B.

On August 30, 2004, the day before the scheduled follow-up visit, Hayes was placed into custody at San Quentin State Prison. Opp'n at 3. Defendant Dr. Clarke saw him upon entry and prescribed Vicodin and noted that he should urgently see an orthopedist. Posada Decl. at Ex. D. She filled out a "Physicians Request for Service" for Hayes to urgently see an orthopedic specialist. Clarke Decl. Ex. A. As a result of that request, Hayes was scheduled to see Dr. Barry, an orthopedic specialist, on October 1, 2004. Dr. Clarke also recommended that Hayes be assigned to a first tier lower bunk and be given a leg brace and crutches. Clarke Decl. at 2. Plaintiff complains, however, that Dr. Clarke did not provide him with, or recommend that he be provided with, a mobility impairment vest, which would have indicated to prison guards that he was injured and might not be able to comply with orders to drop to the ground. Opp'n. 4. She also did not immediately order or take an X-ray or MRI. *Id*. at 3. Nor did Dr. Clarke, plaintiff complains, order a medical hold that would have postponed any transfer of Hayes to another prison or facility until after he received treatment for his knee. *Id*. at 4.

Hayes was in significant pain because of the patellar rupture. He made several attempts to call attention to his pain and to receive swifter examination and treatment of the injury. He filled out an Inmate/Parolee Appeal Form on September 6, 2004, in which he explained that Dr. Clarke and another physician, Dr. Duff, had both requested an urgent appointment with an orthopedist. Posada Decl. Ex. J. Hayes also explained that he was in a lot of pain and that he believed that he might never be able to walk again correctly if his knee condition were not addressed soon. *Id*. On September 10, 2004, Hayes completed a Health Service Request Form in which he explained that he was told at the scene of his accident that he "need[ed] surgery ASAP," and in which he also explained that he could not lift his leg, could not walk up stairs and that his pain level was at 8 out of 10. *Id*. at Ex. L. Additionally, he stated that before being incarcerated he was scheduled to see an orthopedic specialist on August 31, 2004. *Id*. Also, on September 10, 2004, he completed a reasonable modification accommodation request, in which he requested knee surgery and lower tier

lower bunk or infirmary housing (Hayes apparently had not been given a first tier lower bunk in spite of Dr. Clarke's request.) *Id*. at Ex. M.

Dr. Christensen met with Hayes on September 23, 2004, in response to Hayes' September 10 modification accommodation request. Christensen Decl. at 1. Dr. Christensen approved Hayes' request to be assigned to a first tier lower bunk and noted that Dr. Clarke had already approved Hayes to see an Orthopedic Specialist and had prescribed him medication. *Id.* at 2. Dr. Christensen denied Hayes' request for infirmary housing. Posada Decl. Ex. P. Dr. Christensen also did not X-Ray or perform an MRI on Hayes' knee, in spite of recognizing that Hayes' knee was "swollen and tender, which is consistent with a Patella Tendon Rupture." *Id*.

On September 17, 2004, Dr. Williams approved a request for Hayes to be temporarily removed from San Quentin for a consultation with Dr. Barry on October 1, 2004. Williams Decl. at 2. Dr. Williams also signed a Disability Placement Program Verification that approved Hayes' housing restriction. *Id.* Dr. Williams never personally examined Hayes. *Id.* Ultimately, Dr. Barry's office rescheduled the October 1 appointment, and Hayes never met with Dr. Barry.

Around October 15, 2004, Hayes was transferred to the Sierra Conservation Center. There, Dr. St. Clair saw Hayes and noted that he was in pain rated 8-10, had a swollen knee, was hobbling and on crutches, and had been in line to see an orthopedic specialist but never saw one. Posada Decl. Ex. R. Dr. St. Clair prescribed Vicodin, assigned him to a lower bunk and wrote that he would arrange an orthopedic consultation. *Id*. A few days later, on October 18, 2004, Dr. St. Clair requested an orthopedic consultation for Hayes. On October 28, 2004, Dr. St. Clair placed Hayes on a medical hold. *Id*. at Ex. U.

On December 20, 2004, Hayes finally received an MRI at Doctors Hospital of Manteca. *Id.* at 7. The MRI revealed an infrapatellar joint effusion, a complete tear of the patellar tendon with superiorly displaced patella and a small popliteal cyst and subcutaneous edema around the patellar tendon. *Id.* at Ex. CC. In a followup visit on January 7, 2005, Dr. Bradley D. Williams assessed that Hayes had a chronic left patella tendon rupture and that he would treat it through reconstructive surgery using an allograft. *Id*. at Ex. DD. However, before any surgery took place, Hayes was transferred on February 8, 2005, to Santa Clara County Jail. *Id*. at 8. Hayes returned to San Quentin

on April 29, 2005. *Id.* He received another MRI October 13, 2005, from Dr. Jeffrey Tanji, who also diagnosed a complete rupture of the left patellar region. *Id*. at Ex. RR. Hayes did not have surgery while in custody and was paroled on December 16, 2005. *Id*. at 9, Ex. SS.

On February 7, 2006, Hayes visited with Dr. James Hartford, an orthopedist at the Palo Alto Medical Center. Dr. Hartford diagnosed a chronic quad tendon rupture that required reconstruction. *Id.* at Ex. TT. Dr. Hartford noted that the because Hayes had not received an acute repair of his knee, the injury worsened from a patella tendon rupture to a chronic rupture of the infrapatella tendon. *Id*. Hayes' knee would have recovered fully had he received an acute repair, but instead "the best [Hayes] could hope for is possible a 10-15 degree extension lag and possibly flexion to maybe only 100 degrees of the knee." *Id*. Dr. Hartford performed reconstructive surgery on April 7, 2006. *Id*. at UU.

## II. ANALYSIS

### A. Legal Standard

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(c). A fact is material when it could affect a case's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. On a motion for summary judgment, "the district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 574 U.S. 518, 559-560 (2006).

The moving party has the initial burden of production for showing the absence of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). It can satisfy this burden in two ways. "First the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. The moving party cannot simply conclusively state that the nonmoving party does not

have sufficient evidence to establish its case, but rather the moving party must "affirmatively show the absence of evidence." *Id* at 332.

Once the moving party has satisfied the initial burden of production, the burden of proof shifts to the nonmovant to show that there is a genuine issue of material fact.  "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. of Civ. P. 56(e)(2).  The nonmovant must go beyond its pleadings "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file . . .' " *Celotex*, 477 U.S. at 324.

### B.  Evidentiary Objections

Hayes objects to the statement made by each of the three defendants that "[a]t no time was I deliberately indifferent to Mr. Hayes needs," on the ground that none of the defendants had personal knowledge of this matter and it is an improper legal conclusion.  Evidentiary Objections to the Decls. of Dr. Clarke and Williams**.**  With respect to the portions of the declarations to which plaintiff objects, defendants should be viewed as lay witnesses testifying as to their states of mind.  As such, their testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . . ."  Fed. R. Evid. 701.  "Deliberately indifferent" is a legal term regarding the improper treatment of inmates under the Eighth Amendment.  But the phrase also has meaning as it is commonly used.   The court considers the subject testimony only has probative value as to the defendants' states of mind in the sense of its commonly understood meaning and not as a legal conclusion.

### C.  Objection to Defendants' Reply

Hayes objects to defendants' reply because it was filed seven days past the due date.  The court is reluctant to consider the late filing but in the interest of adjudicating cases on the merits and in light of the lack of prejudice to plaintiff, the court will consider the reply as filed.

### D.  Eight Amendment Violations

"To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'  First, there must be a demonstration that the prison

1  official deprived the prisoner of the 'minimal civilized measure of life's necessities.' Second, a
2  prisoner must demonstrate that the prison official 'acted with deliberate indifference in doing so.'"
3  *Toguchi v Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). In terms of the objective
4  portion of the two-part test, a plaintiff has to demonstrate the failure to treat his or her condition
5  could have caused "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104
6  (1976). Deliberate indifference, the subjective component of this two-part test, is more than mere
7  negligence. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). It requires that a prison
8  official "know[] of and disregard[] an excessive risk to inmate health and safety." *Gibson v. County*
9  *of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002). It is not sufficient that an official was
10 aware of facts from which the inference that a substantial risk of serious harm exists, the prison
11 official "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However,
12 deliberate indifference "may be shown by circumstantial evidence when the facts are sufficient to
13 demonstrate that a defendant actually knew of a risk of harm." *Lolli v. County of Orange*, 351 F.3d
14 410, 421 (9th Cir. 2003); *see also Gibson*, 290 F.3d at 1197 (stating in dicta that obvious signs of
15 mental illness could be enough to demonstrate that prison deputies knew an inmate was mentally
16 ill). A plaintiff must also show "that the course of treatment was medically unacceptable under the
17 circumstances . . ." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). This requires showing
18 more than a difference of medical opinion about a prisoner's treatment. *Sanchez v. Vild*, 891 F.2d
19 240, 242 (9th Cir. 1989).

20 With regard to the objective portion of the test, Hayes alleges that the defendants were
21 deliberately indifferent to him as they failed to treat his ruptured patellar tendon in a timely fashion.
22 Opp'n to Mot. for Summ. J. at 1. After his injury in July of 2004, Hayes did not receive surgery
23 until April of 2006. As a result, Hayes suffered pain in his right knee for around a year-and-one
24 half. In his numerous appeals for modification or accommodation, Hayes describes his physical
25 pain, limited mobility, and fear that his knee would never heal fully if not treated in the near future.
26 *Id*. at Exs. J, M, P, S. The long term impact of the tendon injury may have been exacerbated by its
27 non-treatment. According to the medical records Dr. Hartford prepared after seeing Hayes, acute
28 repair of Hayes' knee could have resulted in a full recovery. The reconstructive surgery that took

1 place in April of 2006 could not provide for full recovery of the knee.[1]  These facts support  Hayes'
2 claim that he has suffered significant and prolonged pain because his knee injury was left untreated
3 for so long.

4 However, the objective prong of the deliberate-indifference test requires that the particular
5 defendants deprived plaintiff of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).
6 Here, defendants recommended or approved that Hayes see a specialist, and a specialist appointment
7 was scheduled with Dr. Barry.  But after Dr. Barry's office canceled the appointment, a number of
8 transfers and Hayes' parole interfered with his prompt treatment.  Hayes has offered no evidence that
9 the named defendant doctors knew of the cancellation or that they engaged in specific conduct that
10 manifests a deliberate  indifference.  Hayes has thus failed to demonstrate that the conduct of any
11 defendant deprived him of "the minimum civilized measure of life's necessities."  *Toguchi*, 391 F.3d
12 at 1057.

13 The subjective portion of the test also requires that the plaintiff show that the defendants
14 were aware of and disregarded a substantial risk to plaintiff's health, and that plaintiff's medical
15 treatment was unacceptable.  It is undisputed that the defendants provided Hayes with medical
16 treatment and requested that he see a specialist.  Dr. Clarke also noted that Hayes' condition was
17 "Ortho Urgent" and requested a follow-up in one week's time.  Posada Decl. Ex. F.  Plaintiff states in
18 his opposition that "Dr. Clarke should have recommended or ordered, based on the medical records
19 reviewed, that a medical hold be initiated so that no transfers were initiated until after said time as
20 Mr. Hayes had received the necessary treatment and/or care or undergone the necessary surgical
21 treatment to repair his left knee."  Opp'n. 4.  To satisfy the subjective prong, then, plaintiff must
22 demonstrate that Dr. Clarke knew of the substantial risk of not initiating a medical hold and
23 disregarded that risk.  Hayes has presented no evidence, circumstantial or otherwise, that Dr. Clarke
24 knew or should have known that a transfer was likely and posed such a substantial risk.  The court
25 cannot conclude that the subjective prong has been satisfied as to Dr. Clarke.

---

[1] In their reply, defendants do not expressly object to including Dr. Hartford's diagnosis reflected in his records but nevertheless characterize it as hearsay.  Dr. Hartford's records of Hayes' visit appears to be a statement prepared for the purpose of a medical diagnosis.  Opp'n. to Mot. for Summ. J. Ex. TT.  It would therefore, properly authenticated, fit into the hearsay exception for statements made for the purposes of medical diagnosis.  Fed. R. Evid. 803(4).

In his opposition, Hayes makes no suggestion as to any risk that defendants Dr. Christensen and Dr. Williams knew of and disregarded. Indeed, there is no allegation as to how Dr. Christensen and Dr. Williams should have acted differently. Dr. Christensen assigned Hayes to a lower bunk and restricted his use of the stairs. Dr. Christensen Decl. ¶ 5. Dr. Christensen noted that Hayes had already been scheduled to see an Orthopedic Specialist. *Id.* ¶ 4. Dr. Williams' involvement was only to approve Hayes' request to leave San Quentin in order to have a consultation with Dr. Barry. Dr. Williams never personally examined Hayes. Dr. Williams Decl. ¶ 4-5. Hayes thus fails to raise a genuine issue of material fact that any defendant was deliberately indifferent to his medical needs.

Despite the very real problems and lengthy delays that marked the treatment of Hayes' knee injury, Hayes has failed to raise a genuine issue of material fact that *any of the named defendants* in this action deprived him of his rights under the Eighth Amendment. Although the court's prior tentative ruling denied the motion because there appeared to be a material issue of fact with respect to whether Hayes suffered severe discomfort and injury as a result of the failure to provide orthopedic care and surgery for him earlier, a closer examination of the evidence fails to establish a triable issue of fact that any of the named defendants were guilty of being deliberately indifferent. Plaintiff offers no evidence that the named doctors knew, or had reason to know, that their orders were not followed or that plaintiff's appointment with an orthopedic specialist had been cancelled

### III. ORDER

For the foregoing reasons, the court, although sympathetic with plaintiff's complaint, grants defendants' motion for summary judgment.

Dated:     09/15/09

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

James L. Armstrong          jla@theaccidentlawyer.com
Steven Richard Jacobsen     srg@theaccidentlawyer.com
Brenda Dalila Posada        bdp@theaccidentlawyer.com

**Counsel for Defendants:**

John P. Devine              john.devine@doj.ca.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     09/15/09                               JAS
                                          **Chambers of Judge Whyte**

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—No. C-05-00070 RMW
9